**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian (SBN: 24903)
ak@kazlg.com
245 Fischer Ave., Suite D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**KAZEROUNI LAW GROUP, APC**
Jason A. Ibey (SBN: 284607)
jason@kazlg.com
321 N. Mall Drive, Suite R108
St. George, Utah 84790
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

[Additional Counsel on Signature Page]

*Attorneys for Plaintiff,*
*Loren Stone*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| LOREN STONE, Individually And On Behalf Of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL MOTORS, LLC,<br><br>Defendant. | Case No.<br><br>**CONSUMER CLASS ACTION COMPLAINT FOR VIOLATIONS OF:**<br><br>1) **CONSUMER LEGAL REMEDIES ACT;**<br>2) **UNFAIR COMPETITION LAW;**<br>3) **SONG-BEVERLY ACT; AND**<br>4) **EXPRESS WARRANTY.**<br><br>**JURY TRIAL DEMANDED** |

**INTRODUCTION**

1.       This action concerns a safety feature defect affecting thousands of Chevrolet Bolt EVs in the United States. Specifically, Bolt EV model years 2017-2020 have defective passenger-side blind spot detection sensors that frequently activate the blind spot warning lights when there is nothing present in the vehicles' blind spots—either because the sensors lack proper shields, or the shields are defective and easily (and unwantedly) detach from the sensors.  Besides annoying and confusing drivers, the blind spot system defect poses a safety hazard to the drivers and those with whom they share the road. General Motors, LLC ("Defendant" or "GM") issued a Technical Service Bulletin in November 2017, acknowledging the issue with the 2017 Bolt EVs' blind spot systems and offering owners a free fix; however, GM waited over three years to acknowledge that 2018-2020 Bolt EVs also had issues with the cars' blind spot sensors/shields, and it has since failed to compensate those owners who have paid out-of-pocket to repair the problem.

2.       Plaintiff Loren Stone ("Plaintiff" or "Mr. Stone") and similarly situated consumers paid significant sums of money to own or lease 2018-2020 Bolt EVs. GM gladly accepted their money but failed to provide vehicles with properly functioning blind spot monitoring systems—a safety feature for which GM charged some customers a premium.

3.       Accordingly, Plaintiff now brings this case individually and on behalf of all other similarly situated consumers to require GM to follow the law, to honor its warranties, to repair the defective vehicles, and to reimburse and compensate all affected owners and lessees. Plaintiff seeks all available monetary damages, as well as all available equitable and injunctive relief.

**THE PARTIES, JURISDICTION, AND VENUE**

4.       Plaintiff, a proposed class and subclass representative, is an adult citizen of the state of California. Mr. Stone is domiciled in Ventura County, California, a state

different from where Defendant was incorporated or maintains its principal place of business.

5.    Upon information and belief, GM is incorporated under the laws of Delaware and maintains its principal place of business is 300 Renaissance Center, Detroit, MI 48265.

6.    Upon information and belief, General Motors LLC is a subsidiary of General Motors Company.

7.    The United States District Court for the Central District of California has subject matter jurisdiction over this action under the Class Action Fairness Act because there is minimal diversity and the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2)(A). None of the causes of action stated here has been assigned or otherwise given to any other court or tribunal.

8.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)-(c). GM does substantial business in California and within this judicial District, is registered to and is doing business within California, and otherwise maintains requisite minimum contacts with California.

9.    As one of the world's largest auto manufacturers, General Motors makes and sells cars and trucks worldwide under well-known brands such as Buick, Cadillac, Chevrolet, and GMC.

10.    GM distributes the defective vehicles in this judicial District and receives substantial compensation and profits from the sale and lease of the defective vehicles in this judicial District, and it has and continues to conceal and make material omissions in this judicial District so as to subject it to personal jurisdiction in this judicial District.

11.    Venue is also proper in this District because, like many other class members, significant and material aspects of the transactions relating to Plaintiff's

purchase of his defective vehicle occurred within and were otherwise connected to this judicial District.

## FACTUAL ALLEGATIONS

## GENERAL ALLEGATIONS

12. The defect in this case involves the passenger-side blind spot detection sensor in GM's Chevrolet Bolt EVs ("Bolt"), and Plaintiff seeks remedies for model years 2018-2020.

13. The Bolt's blind spot warning light is frequently triggered even when there is nothing present in the Bolt's right side due to failure of the sensor shielding to stay in place.

14. This causes Bolt owners to mistakenly believe there is something in their vehicles' blind spots when nothing is there.

15. The sensor shielding is simply a piece of aluminum adhesive placed over part of the sensor to prevent the sensor from detecting the vehicle's own tires:[1]

_____

[1] As one consumer explained in a YouTube video concerning a 2017 Bolt, the blind spot warning sensor starts detecting the vehicles own tires when the triangular shaped foil adhesive (which contains a barcode) falls off. *See* https://www.youtube.com/watch?v=ERi0NSmEtFM, last accessed on July 19, 2021.

4



© 2017 General Motors.                    All rights reserved.

16.     As early as 2017, Bolt owners began reporting the blind spot detection system issue to GM and the National Highway Traffic Safety Administration ("NHTSA").  An example of those early reports includes:

> My Bolt EV comes equipped with the optional side blind zone alert system which lights up in my side view mirrors when activated by a car in my blind zone. **This winter the warning lights were activated both when a vehicle was in my blind zone and at many other times as well.** After reading about the issue online I realized that … the system is only calibrated to work with the specific OEM tires the car came equipped with and does not work properly with the same brand of tire with a winter tread … [The manufacturer] considers the issue resolved by using only the OEM all season tires. I feel next winter I would have to find a way to disconnect the side blind zone alert warning lights rather than foregoing the use of snow tires. **The distraction of the side blind zone alert warning lights going off all the time is more than a distraction, I believe it is a safety issue.**

CLASS ACTION COMPLAINT

*January 1, 2018 Incident, Submitted May 2, 2018, NTSHA ID #11091389* (emphasis added).

17.     Comments on a ChevyBolt.com discussion forum[2] are also illustrative of the widespread issue:

> I just got my bolt premier and next day after driving it off the lot, I noticed that … the passenger side mirror would come on when the cars aren't even in the blind spot, they come on when the car is actually 2-3 car lengths behind the car.

*Oct. 10, 2017 Comment #1 by EVDriver – Blind Spot Indicator Not Working Properly*

> My build date is 06/17, and last week my blind spot indicator started giving random alerts. This is very annoying.

*Sept. 8, 2017 Comment #7 by Lightning – Blind Spot Indicator Not Working Properly*

> Add me to the list, I thought it was related to my Winter Tire Setup as it appeared right after I swapped wheels/tires … This was driving me nuts.

*Nov. 21, 2017 Comment #9 by bbg523 – Blind Spot Indicator Not Working Properly*

> I'm experiencing this too.

*Dec. 13, 2017 Comment #23 by ribbitribbit – Blind Spot Indicator Not Working Properly.*

18.     GM issued a Technical Service Bulletin in November 2017, acknowledging the issue with the 2017 Bolt's blind spot detection system; GM attributed the problem to the butyl tape application at the sensor bracket, an electrical connection and routing issue with the sensor harness, and poor grounding. For the nuisance, GM offered a free fix to owners of 2017 Bolts.

19.     Despite selling 2018-2020 Bolts with, upon information and belief, the same blind spot detection system, GM failed to warn owners of these models about

---

[2] https://www.chevybolt.org/threads/blind-spot-indicator-not-working-properly.16922/ (last accessed on July 20, 2021).

the defect. These owners were not informed that the Bolt blind spot detection system may be triggered sporadically, even if nothing was present on the vehicles' blind spots.

20. In October 2020, GM finally issued a Technical Service Bulletin informing technicians that the problem with the blind spot sensor shield also affected model years 2018 through 2020.

21. GM has sold and/or continues to sell and lease Bolts with defective blind spot detection systems that either do not contain appropriate shields on the blind spot detection sensor or are sold with defective shields that easily (and unwantedly) detach from the sensor.

22. As a result, GM has continued to subject its customers, including Plaintiff and the putative class, to severe risk of harm, as well as annoyance and confusion.

23. Plaintiff and, upon information and belief, many other owners of 2018-2020 Bolts have had to pay to have the blind spot sensor issue fixed, as GM waited until October 2020 to acknowledge the issue.

24. Unlike GM, the average consumer does not have billions of dollars in resources. The average consumer has financial constraints which do not allow them to readily purchase or lease new vehicles.

25. GM could have eliminated the problem altogether back in 2017 by redesigning the blind spot detection system in its newer Bolt models. It instead elected to cover the problem with a Band-Aid, subjecting its customers to repetitive, involuntary experimentation and repairs on a critical safety feature owners depend on.

26. GM has chosen to continue to profit from the sale and lease of 2018-2020 Bolts, despite knowing that the blind spot sensor is defective and poses a danger to consumers through distraction and annoyance.

27. GM has known how to fix the problem since 2017, but it has left consumers driving defective 2018-2020 Bolts until finally acknowledging in October 2020 that the issue affected more than simply 2017 Bolts.

//

## PLAINTIFF STONE

28.    On or around October 30, 2018, Plaintiff purchased a new 2018 Bolt from Simi Valley Chevrolet, a GM-authorized dealer in Ventura County, for over $40,000.

29.    Despite the various consumer complaints and its own internal investigations on the blind spot detection issue, GM chose not to notify Plaintiff or any other similarly situated purchaser that the Bolt blind spot monitoring systems were defective.

30.    As with any reasonable consumer, Plaintiff expected that he would receive a safe, reliable vehicle in exchange for the significant money he spent on his GM Bolt. Sometime after purchasing the Bolt, Plaintiff noticed that the passenger's side warning light was frequently activated when there was nothing present in the vehicle's blind spot.

31.    Plaintiff took the Bolt to Simi Valley Chevrolet to get the warning light checked out.  Lacking guidance from GM as to the blind spot sensor issue, Simi Valley Chevrolet failed to diagnose the problem and instead replaced the Bolt's driver-side mirror.

32.    The warning light on Plaintiff's Bolt nevertheless continued to sporadically turn on, causing annoyance and confusion to Plaintiff and creating a potential safety issue.

33.    In early October 2020, Plaintiff again took the vehicle to Simi Valley Chevrolet to get the warning light checked out. This time, Simi Valley Chevrolet correctly diagnosed the issue—perhaps due to GM's October 2020 Technical Service Bulletin, which finally acknowledged that the blind spot sensor problem also affected model years 2018-2020.

34.    Simi Valley Chevrolet ultimately fixed the blind spot sensor issue with Plaintiff's Bolt by replacing the foil adhesive shielding but charged him approximately $62.46 for a defect GM knew existed at the time of purchase.

8

## ACCRUAL OF RIGHTS, CONTINUING VIOLATION, EQUITABLE TOLLING, AND FRAUDULENT CONCEALMENT

35.     Plaintiff and the putative class did not discover, nor could they discover through any reasonable efforts, that Defendant had manufactured and/or sold Bolts with defective blind spot detection systems since the 2017 models.

36.     Defendant concealed over the years that the blind spot detection sensors were defective for the models 2018-2020 to create the false impression among Plaintiff and those similarly situated that the Bolts were merchantable and safe for normal operation.

37.     Plaintiff was justified in not bringing the claims earlier based on Defendant's failure to inform Plaintiff of the true nature, extent, and scope of the defect and the repairs and replacements needed to eliminate the hazard.

## CLASS ACTION ALLEGATIONS

38.     Pursuant to Rules 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff will seek certification of a nationwide consumer class ("Class") consisting of:

> All persons in the United States who own or owned, or lease or leased, 2018-2020 Chevrolet Bolt EVs equipped with a blind spot monitoring system.

39.     Additionally, under Rules 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff will seek certification of a nationwide consumer class ("Out-of-Pocket Nationwide Class") consisting of:

> All persons in the United States who own or owned, or lease or leased, 2018-2020 Chevrolet Bolt EVs equipped with a blind spot monitoring system and who paid money to repair the blind spot monitoring system.

40. Plaintiff will also seek certification of a California subclass ("Subclass") under Rules 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure consisting of:

> All persons in California who purchased or leased 2018-2020 Chevrolet Bolt EVs equipped with a blind spot monitoring system.

41. Finally, under Rules 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff will also seek certification of a California subclass ("Out-of-Pocket Subclass") consisting of:

> All persons in California who purchased or leased 2018-2020 Chevrolet Bolt EVs equipped with a blind spot monitoring system and who paid money to repair the blind spot monitoring system.

42. The Class, Out-of-Pocket Nationwide Class, Subclass and Out-of-Pocket Subclass (collectively, the "Classes") definitions specifically exclude all persons who assert personal injury claims arising from or relating to the defective blind spot monitoring systems.

43. **Numerosity.** The members of the Classes consist of a sufficiently large group of individuals, believed to exceed 1,000 members, and is so large that it is impractical to join all members before the Court as individual plaintiffs.

44. **Typicality.** Plaintiff is a member of the Classes, and brings claims typical of the Classes, because Plaintiff, like all other class members, purchased or leased a Bolt designed, manufactured, marketed, distributed, sold, and leased by GM, and Plaintiff had to pay money out of pocket to have the defect repaired by a dealership. Consequently, Plaintiff and the Classes have all been damaged by GM's misconduct and have incurred or will incur the cost of repairing or replacing the blind

spot monitoring system or its components. GM's conduct is common to members of the Classes, representing a shared factual nexus of injury.

45. **Rule 23(b)(3) Commonality.** The Class, Out-of-Pocket Nationwide Subclass, Subclass and Out-of-Pocket Subclass are united by a community of interest in obtaining appropriate remedies, restitution, damages, including injunctive relief, repair or replacement of the defective vehicle parts, and other available relief designed to redress GM's wrongful conduct. The questions and issues of law or fact are of a common or general interest, affecting the Classes, and public at large. Those common questions and issues include:

a. Whether the Bolts have defective blind spot monitoring systems;

b. Whether the defects in the Bolts' blind spot monitoring systems constitute a material fact;

c. Whether the defects in the Bolts' blind spot monitoring systems pose an unreasonable safety risk;

d. Whether an ordinary reasonable consumer would have purchased or leased a Bolt had they known of the blind spot monitoring system defects;

e. Whether an ordinary reasonable consumer would have paid less money to purchase or lease a Bolt had they known of the blind spot monitoring systems—and if so, how much less an ordinary reasonable consumer would have paid;

f. Whether GM had actual or constructive knowledge of the Bolts' blind spot monitoring defects for models 2017-2020;

g. When GM first gained actual or constructive knowledge of the Bolts' blind spot monitoring system defects;

h. Whether GM had a duty to disclose the defects with the Bolts' blind spot monitoring systems before the members of the Classes purchased or leased the Bolts;

11

i.  Whether GM had an ongoing duty to disclose the defects with the blind spot monitoring systems to the members of the Classes;

j.  Whether GM breached its express and implied warranties for the Bolts as a result of the blind spot monitoring system defects;

k.  Whether GM has been unjustly enriched by the members of the Classes as a result of the purchase and lease of the Bolts;

l.  Whether GM breached its obligations to provide timely repairs for the Bolts;

m. Whether GM is liable for out-of-pocket expenses incurred by the Out-of-Pocket Nationwide Class and Out-of-Pocket Subclass members as a result of the blind spot monitoring defects;

n.  Whether GM should be declared legally and financially responsible for notifying the members of the Classes about the true and complete nature and extent of the blind spot monitoring system defects;

o.  Whether GM should be declared legally and financially responsible for notifying members of the Out-of-Pocket Nationwide Class and Out-of-Pocket Subclass about their rights to reimbursement from GM for the costs incurred in diagnosing, repairing, and replacement defective blind spot monitoring systems;

p.  Whether and to what extent GM is obligated to pay actual and consequential damages to the members of the Classes as a result of the blind spot monitoring system defects; and

q.  Whether GM should be obligated to pay punitive damages as a result of the blind spot monitoring system defects, and if so, the amount of those damages.

46.     **Adequacy.** Plaintiff will fairly and adequately represent the claims of the Classes and protect the interests of each member without exercising personal interest or otherwise acting in a manner inconsistent with the best interests of the

Classes generally. Further, Plaintiff has retained attorneys experienced in the litigation of class and representative claims and in the area of consumer protection litigation who have agreed to and will responsibly and vigorously advocate on behalf of each member of the Classes throughout the litigation.

47.    **Ascertainably.** The identity of each member of the Classes is readily ascertainable from various sources including GM's ownership records, dealership records, government ownership records, or via simple notice by publication.

48.    **Predominance.** The common questions of law or fact identified above predominate over those questions affecting only specific members of the Classes.

49.    **Superiority.** This class action is superior to the other means available to the members of the Classes to obtain relief because:

    a. Without class certification, the prosecution of separate consumer actions by individual members of the Classes would be impracticable and financially difficult, and create a risk of repetitive, inconsistent, and varying adjudications. This would have the effect of establishing incompatible standards of conduct for GM, discouraging the prosecution of meritorious but small claims, and result in adjudications which would be dispositive of the interests of other members of the Classes not parties to the adjudication, or otherwise substantially impair the ability of members of the Classes to protect their rights and interests;

    b. Because the damages suffered by each member of the Classes are relatively small compared to the expense and burden of prosecuting this compelling case against a well-financed company, this class action is the only way each member of the Classes can redress the harm that GM caused;

    c. The class action procedure is superior to other methods of adjudication, and specifically designed to result in the fair, uniform

13

and efficient adjudication of the claims presented by this Complaint. This class action will facilitate judicial economy and preclude the undue financial, administrative and procedural burdens which would necessarily result from a multiplicity of individual actions;

d. Should individual members of the Classes be required to bring separate actions, courts would face a multitude of lawsuits that would burden the court system and create a risk of inconsistent rulings and contradictory judgment; and

e. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale, and comprehensive supervision by a single court.

50.    **Rule 32(b) Injunctive and Declaratory Relief.** GM acted or refused to act on grounds generally applicable to the Classes, making the award of equitable relief and/or restitution appropriate to each member of the Classes in their entirety.

<u>**CAUSES OF ACTION**</u>

**COUNT I**

**CALIFORNIA CONSUMER LEGAL REMEDIES ACT,**

**CAL. CIV. CODE § 1750, *ET SEQ.***

(Applicable to the Subclass and Out-of-Pocket Subclass)

51.    Plaintiff realleges all preceding paragraphs and brings this count individually and on behalf of the California Subclass and Out-of-Pocket Subclass.

52.    The Consumers Legal Remedies Act ("CLRA") provides a list of "unfair or deceptive" practices in a "transaction" relating to the sale of "goods" or "services" to a "consumer." The Legislature's intent in promulgating the CLRA is expressed in Civil Code Section 1760, *et seq.*, which provides, *inter alia*, that its terms are to be:

Construed liberally and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.

53. GM is a "person" under California Civil Code § 1761(c).

54. Plaintiff and the Subclass and Out-of-Pocket Subclass members are "consumers" under California Civil Code § 1761(d) because they purchased Bolts primarily for personal, family, or household use.

55. The purchases of the Bolts by Plaintiff and the Subclass and Out-of-Pocket Subclass constitute "transactions" within the meaning of California Civil Code § 1761(e).

56. The Bolts are "goods" within the meaning of California Civil Code § 1761(a).

57. GM's violations of the CLRA occurred repeatedly in GM's trade or practice—including the design, manufacture, distribution, marketing, sale, and lease of the Bolts.

58. **Section 1770(a) violations.** GM violated California Civil Code § 1770(a) by concealing, misrepresenting, and failing to disclose the blind spot monitoring system defects, including the true nature, extent, and cause of the blind spot monitoring system defects. In particular:

    a. GM violated California Civil Code § 1770(a)(5) by representing that the Bolts had a characteristic that they did not actually have—i.e., that the vehicles were safe and suitable for use on the roadway, when, in fact, they were not because their blind spot monitoring systems were defectively designed such that they frequently came on when there was nothing in the vehicles' blind sides;

    b. GM violated California Civil Code § 1770(a)(7) by representing that the Bolts were of a particular quality, grade, or standard when, in fact, they were not of that quality, grade, or standard;

c. GM violated California Civil Code § 1770(a)(9) by concealing and failing to disclose that the Bolts' blind spot monitoring systems were inherently defective, defectively designed, and not suitable for their intended use despite advertising them as safe and suitable for their intended function—alerting Bolt drivers of vehicles and other objects in their blind spots; and

d. GM violated California Civil Code § 1770(a)(16) by failing to market, distribute, sell, and lease the vehicles in accordance with GM's previous representations—i.e., that the Bolts were safe and suitable for use on the road, when, in fact, they were not because of the blind spot monitoring system defects.

59. **Duty to disclose.** GM had a duty to disclose the existence, nature, and extent of the defects with the Bolts' blind spot monitoring systems (which it breached, as alleged above), because:

a. GM was in a superior position to know the true facts about the blind spot monitoring system defects as the designer, manufacturer, assembler, distributor, marketer, and warrantor of the Bolts, and given its experience and knowledge as an expert and long-time veteran of the automotive industry;

b. Plaintiff and the Subclass and Out-of-Pocket Subclass could not reasonably have been expected to know, learn, or discover the defects with the blind spot monitoring systems as they were not part of the process of designing, manufacturing, assembling, marketing, distributing, or warranting the vehicles;

c. GM knew that Plaintiff and the Subclass and Out-of-Pocket Subclass could not reasonably have been expected to know, learn, or discover the existence, nature, or extent of the blind spot monitoring system defects; and



d. By virtue of having concealed the nature, extent, and scope of the blind spot monitoring system defects.

60. **GM's actions and/or omissions could mislead a reasonable consumer.** A reasonable consumer would expect that the blind spot monitoring system on a Bolt would not have an unreasonably propensity to come on when nothing is present in the vehicle's blind spot, causing confusion while driving. Consequently, GM's unfair and deceptive trade practices could deceive a substantial portion of the purchasing public and imposed a serious safety risk on the public.

61. **Materiality.** The safe, reliable, and proper functioning of a blind spot monitoring system is a material component of an automobile transaction because it is required to ensure the vehicle can safely and properly operate on the roadways. Indeed, GM sells the blind spot monitoring as an add-on in some Bolt trims. The average reasonable consumer would have considered the defect to constitute an important and material part of deciding whether to spend money to purchase or lease a Bolt.

62. **Damages.** As a result of GM's omissions and misrepresentations, Plaintiff and the Subclass and Out-of-Pocket Subclass: (1) suffered an ascertainable loss of money, property, and value of the Bolts; and (2) were harmed and suffered actual damages because the Bolts have a latent safety defect which has an unreasonably propensity and/or certainty to fail before the end of their expected useful life (i.e., the blind spot monitoring system should last as long as the car).

63. **Injunctive, declaratory, and other equitable relief.** Due to GM's original and continuing misconduct alleged above, Plaintiff and the Subclass and Out-of-Pocket Subclass are entitled to injunctive, declaratory, and equitable relief, including an order, judgment, and other judicial action, decision, or proclamation:

a. Declaring that the Bolts have a safety defect in their blind spot monitoring systems;

b. Declaring that GM's conduct violated the CLRA;

c. Declaring that Plaintiff and the Out-of-Pocket Subclass are entitled to reimbursement or restitution for money spent on the Bolts; and

d. Enjoining GM from continuing to violate the CLRA.

64. Pursuant to section 1780(e) of the California Civil Code, Plaintiff and the Subclass and Out-of-Pocket Subclass assert claims for damages and attorneys' fees and costs.

65. In prosecuting this action to enforce important rights affecting the public interest, Plaintiff seeks the recovery of attorneys' fees, which are made available to a prevailing plaintiff in class actions such as this.

66. Pursuant to § 1782(a) of the CLRA, on or about March 25, 2021, Plaintiff through counsel notified Defendant in writing (the "CLRA Demand") via certified mail return receipt requested of the particular violations of § 1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to act.

67. Having received no response after more than 30 days, Plaintiff, through counsel, sent a follow-up letter to GM dated May 12, 2021.

68. As of July 17, 2021, however, GM has failed to provide, or even offer to timely provide, all the requested remedies sought in Plaintiff's CLRA Demand. GM's untimely response (dated June 10, 2021) to the initial demand letter merely offered compensation to Plaintiff individually.

69. Attached hereto as **Exhibit A** is a sworn declaration from Plaintiff pursuant to California Civil Code § 1780(d).

70. **Request for relief.** Plaintiff, individually and on behalf of the Subclass and Out-of-Pocket Subclass, seeks injunctive, restitution and attorneys' fees and costs, and damages, including punitive damages, pursuant to Cal Civ. Code § 1780, *et seq*.

# COUNT II

## CALIFORNIA'S UNFAIR COMPETITION LAW,

## CALIFORNIA BUS. & PROF. CODE 17200, *ET SEQ.*

(Applicable to the Subclass and Out-of-Pocket Subclass)

71. Plaintiff realleges all preceding paragraphs and brings this count individually and on behalf of the California Subclass and Out-of-Pocket Subclass.

72. The UCL defines "unfair business competition" to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. California Business and Professions Code § 17200.

73. The UCL imposes strict liability. Plaintiff need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

74. **Violations of Section 17200.** GM violated California Business & Professions Code § 17200 (the "Unfair Competition Law" or "UCL") by engaging in "unfair competition," including through "unlawful, unfair or fraudulent business acts or practices" and "unfair, deceptive, untrue or misleading advertising." GM's violations include:

a. Advertising, marketing, distributing, selling, and leasing the Bolts when GM knew those vehicles were defective and unable to reliably and safely perform their intended use;

b. Failing to disclose the true nature, scope, and extent of the blind spot monitoring system defects; and

c. Concealing material facts regarding the Bolts—i.e., that those vehicles had defective blind spot monitoring systems.

75. **Duty to disclose.** GM had a duty to disclose the existence, nature, and extent of the defects in the Bolts' blind spot monitoring systems (which it breached, as alleged above), because:

KAZEROUNI
LAW GROUP, APC

a. GM was in a superior position to know the true facts about the blind spot monitoring system defects as the designer, manufacturer, assembler, distributor, marketer, and warrantor of the vehicles, and given its experience and knowledge as an expert and long-time veteran of the automotive industry;

b. Plaintiff and the Subclass and Out-of-Pocket Subclass could not reasonably have been expected to know, learn, or discover the defects in the blind spot monitoring systems as they were not part of the process of designing, manufacturing, assembling, marketing, distributing, or warranting the vehicles;

c. GM knew that Plaintiff and the Subclass and Out-of-Pocket Subclass could not reasonably have been expected to know, learn, or discover the existence, nature, or extent of the blind spot monitoring system defects; and

d. By virtue of having concealed the nature, extent, and scope of the blind spot monitoring system defects.

### *"Unlawful" Prong*

76. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

77. **Unlawful conduct.** GM's conduct is unlawful in that it violates:

a. The CLRA, as alleged in Count I;

b. The Song-Berverly Act, as alleged in Count III, below;

c. The express warranty provisions of California Commerce Code § 2313.

### *"Unfair" Prong*

78. A business act or practice is "unfair" under the UCL if it offends an

20

established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.

79.     Defendant's actions constitute "unfair" business practices because, as alleged above, Defendant engaged in a misleading and deceptive practice of knowingly or intentionally selling defective 2018-2020 Bolts.

80.     Defendant's acts and practices offend an established public policy of transparency in the sale or lease of consumer vehicles, and engage in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

81.     The harm to Plaintiff and the members of the Subclass and Out-of-Pocket greatly outweighs the utility of Defendant's practices.

### *"Fraudulent" Prong*

82.     A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

83.     Defendant's practices and omissions alleged above constitute fraudulent business acts or practices as they deceived Plaintiff and the Subclass and Out-of-Pocket Subclass members and are highly likely to deceive members of the consuming public into purchasing a Bolt that unbeknownst to Plaintiff and the Subclass and Out-of-Pocket Subclass was defective.

84.     As a direct and proximate result of Defendant's unlawful, unfair, and fraudulent conduct described herein, Defendant has been and will continue to be unjustly enriched by the receipt of ill-gotten gains from customers, including Plaintiff, who unwittingly provided money to Defendant because of Defendant's fraudulent representations.

85. **Damages.** As a result of GM's actions, omissions, and misrepresentations, Plaintiff and the Subclass and Out-of-Pocket Subclass members: (1) suffered an ascertainable loss of money, property, and value of the Bolts; and (2) were harmed and suffered actual damages because the Bolts have a latent safety feature defect which has an unreasonable propensity and/or certainty to fail before the end of their expected useful life (i.e., a blind spot monitoring system should last as long as the car).

86. **Injunctive, declaratory, and other equitable relief.** In light of GM's original and continuing misconduct alleged above, Plaintiff and the Subclass and Out-of-Pocket Subclass members are entitled to injunctive, declaratory, and equitable relief, including an order, judgment, and other judicial action, decision, or proclamation:

    a. Declaring that the 2018-2020 Bolts have material safety feature defects in their blind spot monitoring systems;

    b. Declaring that GM's conduct violated the UCL;

    c. Declaring that Plaintiff and the Out-of-Pocket Subclass are entitled to reimbursement or restitution for money spent on the Bolts; and

    d. Enjoining GM from continuing to violate the UCL.

87. **Request for relief.** Plaintiff, individually and on behalf of the Subclass and Out-of-Pocket Subclass, seeks all available injunctive and equitable relief (including restitution), as well as attorneys' fees and costs.

**COUNT III**

**SONG-BEVERLY ACT,**

**CAL. CIV. CODE §§ 1790, *ET SEQ.***

(Applicable to the Subclass and Out-of-Pocket Subclass)

88. Plaintiff realleges all preceding paragraphs and brings this count individually and on behalf of the California Subclass and Out-of-Pocket Subclass.

89. The Bolts are "consumer goods" under California Civil Code § 1791(a).

90. Plaintiff and the members of the Subclass and Out-of-Pocket Subclass are "buyers" under California Civil Code § 1791(b). GM is the "manufacturer" of the Bolts under California Civil Code § 1791(j).

91. **The implied warranty.** GM impliedly warrantied to Plaintiff and the Subclass and Out-of-Pocket Subclass members that the Bolts were "merchantable" under California Civil Code §§ 1791.1(a) & 1792.

92. **Breach of the warranty.** The Bolts are not merchantable, and as such GM breached its implied warranty, because:

    a. The Bolts do not have the quality that a buyer would reasonably expect due to the blind spot monitoring defects;

    b. The Bolts would not pass without objection in the automotive trade given that their blind spot monitoring systems have a propensity to come on when nothing is present in the vehicles' blind spots, causing confusion to the consumer while driving;

    c. The blind spot monitoring defects render the vehicles unfit for ordinary purposes;

    d. The labeling for the Bolts failed to disclose the blind spot monitoring defects; and

    e. The vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

93. **Damages.** Plaintiff and the Subclass and Out-of-Pocket Subclass received the vehicles in a condition which substantially diminishes their value, and which prevents the vehicles from safely and properly functioning. As a result, Plaintiff is entitled to damages and other legal and equitable relief, including, at his election, the purchase price of his vehicle, or the overpayment or diminution in value of his vehicle.

94. **Relief.** Plaintiff, individually and on behalf of the Subclass and Out-of-Pocket Subclass, seeks all available monetary damages (including actual,

23

compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

**COUNT IV**

**EXPRESS WARRANTY**

(Applicable to the Class, Out-of-Pocket Nationwide Class, Subclass and Out-of-Pocket Subclass)

95. Plaintiff realleges all preceding paragraphs and brings this count individually and on behalf of the Classes.

96. **The Warranties.** GM issued an express written warranty for each defective vehicle it sold, including that:

    a. The blind spot monitoring systems would be free of defects in materials and workmanship at the time of sale; and

    b. The Bolts would be free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized service facilities, without charge, to fully correct defects in materials or workmanship.

97. **Breach.** GM breached its warranty for the Bolts because:

    a. The blind spot monitoring systems have latent defects which have a propensity to come on when nothing is present in the vehicles' blind spots, causing confusion and/or distraction while driving and subjecting Plaintiff and the Classes to the risk of loss and injury; and

    b. GM denied, concealed, and misrepresented the defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiff and the Classes.

98. **Damages.** GM's breach of its express warranties proximately caused the putative class members to suffer damages in excess of $5,000,000.

99. **Request for relief.** Plaintiff, individually and on behalf of the Class, Out-of-Pocket Nationwide Class, Subclass and Out-of-Pocket Subclass, seeks all

24

available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

## **PRAYER FOR RELIEF**

Plaintiff prays that judgment be entered against Defendant as follows:

1. That this action be certified as a class action;

2. That Plaintiff be appointed as the representatives of the Class, Out-of-Pocket Nationwide Class, Subclass and Out-of-Pocket Subclass;

3. That Plaintiff's attorneys be appointed class counsel;

4. For an order declaring Defendant's conduct to be unlawful;

5. For an order compelling Defendant to make restitution to Plaintiff and the members of the Classes in an amount to be proven at trial;

6. For actual damages;

7. For punitive damages;

8. For pre- and post-judgment interest at the legal rate;

9. For injunctive and other equitable relief as necessary to protect the interests of Plaintiff, and members of the Out-of-Pocket Nationwide Class, Subclass and Out-of-Pocket Subclass, and an order prohibiting Defendant from engaging in the unlawful, unfair, deceptive and fraudulent acts described above;

10. For public injunctive relief necessary to protect the interests of Plaintiff, and members of the Subclass and Out-of-Pocket Subclass, and an order prohibiting Defendant from engaging in the unlawful, unfair, deceptive and fraudulent acts described above;

11. For an order that Defendant engage in a corrective advertising campaign;

12. For an order of restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the members of the Classes as a result of its unlawful, unfair, and fraudulent business practices;

13. For attorneys' fees, costs of suit, and out-of-pocket expenses; and

25

1   14. For such other and further relief that the Court deems proper.

2   **DEMAND FOR JURY TRIAL**

3   100.   Plaintiff, on behalf of himself and the Classes, hereby demands a jury

4   trial of all issues triable by right.

5

6   Dated: July 20, 2021

7                               **KAZEROUNI LAW GROUP, APC**

8                               By   */s/ Abbas Kazerounian*

9                                    Abbas Kazerounian
                                     ak@kazlg.com

10
                                **KAZEROUNI LAW GROUP, APC**
11                              Alan Gudino (SBN: 326738)
                                alan@kazlg.com
12                              2221 Camino Del Rio South, Suite 101
                                San Diego, California 92108
13                              Telephone:   (619) 233-7770
                                Facsimile:    (800) 520-5523
14

15                              *Attorneys for Plaintiff, Loren Stone*

16

17

18

19

20

21

22

23

24

25

26

27

28

